The next case on calendar is American Trucking v. Westchester, 18-35414. Each side will have 15 minutes. Good morning, Your Honors, and may it please the Court, my name is John Hacker for Appellant Westchester. Under the plain terms of the Westchester policy arbitration provision, an arbitrator is supposed to decide all claims of breach under the Westchester insurance contract. The District Court here, however, decided for itself that Westchester breached its contractual duty to defend, and then on that basis, it stopped Westchester from enforcing the provision that required an arbitrator to decide that threshold question of breach. That ruling is squarely contrary to both the Federal Arbitration Act and to Montana law. I'll begin with- There's some very liberal language in some of the Montana cases toward remedies for breach of the duty to defend. So why don't you address the language and show why those cases don't have control in favor of your opposing party? I'm happy to start with Montana law because I don't think there's any problem there, but I want to be clear that the FAA is completely dispositive of this. You don't even need to get to the Montana law question because the substantive controlling law is federal law, which prohibits the approach the District Court took. But I will start with Montana law. Under Montana law, it's perfectly clear that a breach of a policy only estops defenses to coverage. I can use their own brief to establish the point. On their response to breach, on page 13, they accurately describe what Montana law is. Quote, the Montana Supreme Court has uniformly applied the estoppel remedy for decades, true enough, regardless of whether the insurer asserts that the claim falls outside the scope of coverage, or that exclusions apply, or that the defender is not an insurer pursuant to policy definitions, or that policy conditions are not met. All of those are reasons to deny coverage. Not one of them is estoppel of a neutral forum selection clause that is supposed to resolve those threshold questions of whether or not the insurer properly denied coverage. There is no case in Montana or anywhere else in U.S. law that holds that the breach of a duty to defend provision estops an insurer from invoking an arbitration clause. Do you happen to have a good case from, I suppose it would probably be a state Supreme Court, maybe a federal circuit, that holds that, well, that holds your way on that point, that despite an estoppel to deny coverage, there's one or another version of that in many or most states. From a breach of the duty to defend, an agreement to arbitrate nevertheless stands. So on the duty to defend in particular, that was addressed in the HEMO cleanse case by the Indiana Appellate Court, not the Indiana Supreme Court, applied this widely accepted, I mean, literally uniformly accepted rule to this particular context. This court in Brown against- I understand what you're saying. I just want to know what the best authority for what you're saying is. That's the most analogous. It needs these exact facts. So the best we've got is an intermediate appellate court from Indiana. On these exact facts. The best you have is this court's decision in Brown against Dillard's, which explicitly held under California law, to be sure, but California law that applies the same estoppel rule, Your Honor. Brown versus Dillard's says that only a breach of the arbitration agreement itself is a basis for making the arbitration agreement enforceable, not the breach of some independent provision. That's what this court said. Now it didn't say it was a breach of a duty to defend provision, but there's certainly no reason to think there's some special rule for duties to defend provisions. No court has ever said that in Montana. I don't remember for sure right now were any provisions of the arbitration agreement put at issue here. In other words, whether there really is an agreement to arbitrate? Yes and no. Their main focus and what the district court below held was not about the arbitration agreement, right? It was a breach of the duty to defend. I know that's not how the district court approached it. Right. What I'm wondering is, is there anything that we need to consider about whether there is an arbitration agreement? Right. And that's a slightly different question. The answer to that is no, nothing for this court to consider because the court below rejected their arbitration specific argument that said it's a contract of adhesion and therefore can't be enforced under Montana law. I'm not sure that the therefore works there because we're reviewing De Novo. That's why I asked the question. Well, but the other point is they didn't raise it in the brief. They make a passing reference to the fact that the court said it, but you won't find a point heading or a developed argument that it's a contract of adhesion. And obviously they wouldn't argue that because it would be unambiguously preempted by the FAA. Because I remember there was something in the arbitration agreement in this case that said if the parties don't agree to arbitrate, either one can get out of it or something like that. Right. That provision also they haven't relied on correctly because I think everybody agrees. That's just an ordering provision. The first part, it says you can either arbitrate or mediate, then arbitrate. And the insured basically can veto the insurer selection and choose between those. But at most, what that would mean is you mediate first, then arbitrate. They haven't invoked any version of that because their position is the whole thing is categorically unenforceable under the Montana law. We've talked about where no Montana court has ever said that. They do have an additional argument focused on the arbitration agreement, though, and that's that it's an assignment, that they didn't sign it, and therefore they're not parties to it. That's wrong under Montana law and the law of, again, every other jurisdiction, including this court, because when you are assigned a right under an insurance contract like any other contract, you take with it the remedies. That's what this court said in the Comedy Club case. That's what all of the treatises say, and it makes perfect sense. You can't circumvent an arbitration agreement by simply assigning it and changing the character of the rights. I'm sorry. You are making the argument, I think. You help me if I'm wrong, because I don't want to mischaracterize your argument. But you're making, as I understand it, the argument that the question of arbitrability in this case is a question for the arbiters and not a question for the court. There's been a lot of cases, as you well know, if you're following this area of law, bouncing around on this. But is that pursuant to the arbitration agreement itself, that you're making that argument, or are you just making it as a general premise of law? It's both, if I can, and all of the issues bouncing around are not about this issue. This issue is perfectly settled. The arbitration agreement requires arbitration of all claims under the contract. So to that extent, it's based on the agreement. The Federal Arbitration Act, on the other hand, or in addition, says an agreement like that has to be enforced. Every court is required to enforce that, except on grounds, whatever it is, generally applicable under state law. I'm most concerned about the issue of whether this is an arbitrable agreement, I mean an arbitrable dispute. Dispute, absolutely. Yes, sure. So the question of arbitrability is one, in your view, for the arbiters to decide. I think, are you asking about whether the breach of the duty to defend is an arbitrable dispute? It clearly is. I hadn't understood that there was a dispute about whether this dispute could be arbitrated. Rather, it was more whether the duty to defend was some kind of, something that would stop it from going to arbitration. I don't think we're saying anything different. What I'm saying is whether this agreement, the dispute that underlies this agreement, is arbitrable. I'm sorry, I'm not sure you mean by dispute underlying the agreement. I think you mean the dispute about whether your client owes money to the other side. Oh, well, the only way our client, the insurer, owes money to anybody is pursuant to the insurance policy. Right? And that policy has an arbitration provision, so that's why it's arbitrable. But your argument is that the whole thing is arbitrable. That's what I'm trying to get at. All issues under the agreement are arbitrable, yes. That's absolutely right. Greenland has helped me yet again. All of us, no doubt. But you do raise the question of the Federal Arbitration Act, and I want to get to that because I think it's actually, although we briefed it the other way around in the brief,  with the Federal Arbitration Act, because that actually does supply the substantive law. It has to be enforced under the Federal Arbitration Act, unless there's something in state law that says otherwise. Just to kind of follow up, though, sorry, I may be taking you off, but I think your position is that the arbitrator could decide this estoppel rule application. Yes, and if that's what, yes, that's absolutely correct. That's exactly what I was trying to get at. Yes. And your position is that should be decided by the arbitrator. Absolutely. And it still could be a defense. I mean, maybe it's a defense to whether they have to pay, but that that's something that's within the dispute that the arbitrator would decide. 100 percent. The arbitrator decides everything. So you could still lose. It's just you'd lose there instead of here. I don't think we will, but we certainly could. I mean, their argument that we breached presumably the duty to defend presumably would be the first thing they argued to the arbitrator. The arbitrator could say the same thing that the district judge did, that you're stopped from raising any of your defenses to the policy and pay it. The arbitrator could say that if that was the rule under the applicable law and he made a determination or she made a determination that there was, in fact, a breach of the duty to defend. That's for the arbitrator to decide. That's the whole point. Who decides rather than what is decided. And it's just like an agreement to litigate in New York. It's an arbiter. It's a it's a forum selection clause. That's what the courts have called it. The U.S. Supreme Court called a dispute resolution provision. That's what I was asking about before. What your best authority was for saying this was a forum selection clause. They're cited in our brief. There's case after case. I don't remember which cases you cited in your brief. Well, Litton, U.S. Supreme Court says it's a dispute resolution mechanism. But I don't think anybody really disputes that it's a forum selection clause. They didn't come back and say, no, it's not a forum selection clause. They just tried to say that under Montana law, it encompasses something like that. And you're stopped from raising any of your contract defenses to paying the money. But they don't quite say that, Your Honor. What they say is you're stopped from invoking any provision of the contract, including something that's not a contract defense, but is a forum selection clause. That's their position. So it's not really disputed that the forum selection clause. That's what it is. They take the position that the breach of the contract, a material breach by an insurer prevents the insurer from invoking any part of it. Your opposing counsel is going to stand up and say, forum selection clause, you're not. It's just part of the contract. And they lost every argument they could make under that contract because they didn't defend. That's what's going to be said. So why don't you answer that right now instead of depending on the few seconds of rebuttal time you get? Oh, I certainly meant to be arguing that earlier, which is all of the Montana cases that they cite, none of them go that far. They all talk about contract coverage defenses and policy laws. And that's why I asked you, do you have anything but silence that you can argue? Do you have a case that says in so many words? Right. And the HemoGlenz case is one. And then what I have beyond that, Your Honor, is not silence. I want to be very clear about this. Not silence. It's the consistent holding of every court that's looked at this, every single one of them, that the breach of a separate provision doesn't stop the enforcement of an arbitration clause, whether it's duty to defend or otherwise. They all say that. Because it's a forum selection clause, it's not a contract defense. And that's clearest under the Federal Arbitration Act, where courts have said, again, repeatedly, starting with the U.S. Supreme Court, that an arbitration agreement is severable as a matter of federal substantive law, is severable from the rest of the contract. So you cannot, as a matter of law, look at the breach of a separate provision and say we're not going to enforce the arbitration agreement because of the breach of a separate provision because it's severable. Now the Prima Paint case, which originally established that proposition, says, as a general, if the party has repudiated the entire contract, the whole contract, they can still invoke the arbitration agreement. That's Prima Paint. That's Buckeye. Here it follows a fortiori. If you can repudiate the entire agreement and still enforce an arbitration clause, of course you can repudiate one other independent distinct provision and still enforce the arbitration agreement. That's why they're incorrect to say — There are circumstances where you can't. For example, if the agreement was obtained by fraud, then the arbitration — then the agreement is void and the arbitration clause can't be enforced. Your Honor, that's — with respect, that's not correct. That's the dead square holding in Prima Paint. If you're attacking the entire contract as induced by a fraud, you can still invoke the arbitration agreement because the arbitrator gets to decide that threshold question. That's what the holding in Prima Paint — it seemed odd to the dissenting justices, but that's been the rule. But that's not what we're dealing with here. We're dealing with a challenge to a separate provision, a distinct provision, and the courts have consistently said from the Supreme Court on down that you can't challenge a separate provision. You have to challenge the making and enforcement of the arbitration agreement itself. That's what this Court said in Teledyne under the Federal Arbitration Act. So your opposing counsel seems concerned that if it ends up in arbitration, Montana law won't apply, and so then this estoppel rule won't apply. And I — as I understand it, you did take the position at some point that Louisiana law would apply. I don't understand that because it seems like you're arguing that it's a forum selection clause. But wherever you're going to litigate this, in arbitration, in New York, they could apply the law of anywhere. I don't understand the argument that it's not Montana law. Well, the most important point is for the arbitrator to decide which law applies. That's — the arbitrator decides all the issues, and the first one will be what law applies. So it's really that simple. But when we say forum selection clause, we really mean decision-making selection clause. Okay. So the arbitrator — so what are you going to argue to the arbitrator about why it's Louisiana law? The argument for Louisiana law is that Gorman Group is headquartered in Louisiana and that an insurance policy is — the applicable law is, you know, where the insured is headquartered. That would be the argument. But does the contract say that? I thought it said it might have to be litigated in Louisiana or something about where — something about something happening in Louisiana, but nothing about Louisiana law. I think it's just an application of choice of law principles. You know, I suppose you'd start with whatever forum we're in. We wouldn't be in the Montana forum anymore, and so we have to think about which forum we're in. We apply that forum's choice of law rules. That set of choice of law rules will tell us which forum applies. All of that is to be determined, litigated before the arbitrator and decided by the arbitrator. None of it's relevant here. And has it been briefed anywhere, what choice of law applies here? That's — or are we premature on that? A hundred percent premature. That's for the arbitrator to decide. That is definitely — See, that's why I asked you earlier about arbitrability, what is being arbitrated here. And essentially, your position is that everything is being arbitrated here, including all of these issues that Judge Freeland just queried you about. That's absolutely right, but I don't want to be misunderstood. There is a threshold question for a court to decide whether the arbitration agreement itself is enforceable. Oh, yeah. Of course. That's right. And they do have this one argument. They had an argument below about adhesion, which isn't right, and they have an argument about assignment — No, I'm not talking about that. — which is also correct. Okay. But beyond that, yes, absolutely. Once it's — a court decides that the arbitration agreement itself is enforceable, the arbitrator decides literally everything else that's in dispute between the parties. If there are no further questions — We'll give you a minute for rebuttal. Thanks so much. May it please the Court, Martha Sheehy on behalf of Attic. Judge Klinefeld, you were right. It is our position that every argument is waived under their duty-to-defend analysis. And we're very lucky in this case. While these concepts have been prevalent in Montana law for decades, the Montana Supreme Court recently wrapped this up with a tidy bow in the Dragan Y case. I presented that case to you on a 28-J. There was no PFR. It is now a final decision as of Friday. I'd like to walk you through Dragan Y as it applies directly to the facts of this case, because it is dispositive. In Dragan Y, the Montana Supreme Court looked at the expanse and the nature of the breach of the duty-to-defend and the estoppel that arises thereunder. And the Montana Supreme Court said three very distinct things, all of which apply here. And I'm quoting. If the insurer declines to provide a defense against the claims on behalf of the insured in the first instance, the insurer may not put on that defense for its own benefit in later proceedings. But the thing that I'm struggling with is, why is arbitration a defense? I mean, either side might want arbitration. So it seems like Montana has been very clear, you can't use contract defenses once you're under this estoppel rule. But I don't understand why an arbitration clause is a defense. Because it's a bridge to nowhere. If you revive the defenses that they have clearly waived by saying, oh, here's a forum for that. But what the Montana Supreme Court says, the insurer may not put on a defense in later proceedings. So maybe they go to arbitration and they're estopped and they get an award in arbitration. Right. This is my problem, too. I thought a defense to a contract means, I don't have to pay the money because you breached. This isn't that kind of thing. This is more like, well, we have to litigate any disputes in New York. Because when they go to arbitration here, if they go, the arbitrator can say, you have no defense because you breached. So you can't invoke any of your contractual defenses. You have to pay. We agree. We think the arbitrator will say that. However, it's important to note that as you continue down. That seems to be the only thing that that case in the 28J letter would do. It doesn't speak to arbitration. Not exactly. Not exactly, Your Honor. I'll take you to the next spot of that 28J, Dragon Y. In Dragon Y, the court clarified what we have known in Montana for decades, which is, quote, it is the failure to provide a defense that constitutes improper abandonment, justifying an insured to take steps limiting its personal liability through a settlement that the law recognizes as presumptively reasonable. It is an undisputed fact in this case that Westchester did not defend its insured. It is that breach which is undisputed. And what the case says is that the usual setup that you do for excess, the assignment of in Montana law. But I don't see where it says anything about where a form selection clause or an arbitration agreement are not fine. I'll take you to the next quote. In Dragon Y, the court went on to say, quote, this is a material breach of the contract that relieves the insured of the reciprocal contract duty to cooperate with the insurer. The cooperation. The duty of cooperation is gone. The insurer says we'd like you to show up at trial and we'd like you to give us an interview before trial. All gone. Right. In this case, the cooperation clause, which you'd find on excerpts of record 193, says that the insureds agree not to settle or offer to settle any claim, incur any costs, charges and expenses, or otherwise assume any contractual obligation or admit any liability with respect to any claim without the prior written consent of the insurer. We didn't need the consent of Westchester to settle this case. And the settlement agreement is presumably reasonable. The settlement agreement provides that Montana law applies to any dispute arising out of the settlement agreement and that the venue is in Missoula, Montana. So when you. But that's the settlement agreement. And that's not the contract that has the arbitration clause. That's true. However, that's what was put at issue by. It looks like as close as that gets is maybe setting the arbitration in Missoula instead of New York or someplace. I don't think so, Your Honor, because the point of this is that they've waived the right. Westchester has clearly under Dragon Y, waived the right to enforce the cooperation clause. The cooperation clause allows the waiver of that right, allows Attic to settle the case, including choosing the forum. Right. So they got to settle the case and then and then they might have to pay for the settlement. But why don't you have to go to the arbitrator to say, look, they have to pay for the settlement. We didn't need a permission. And Montana law applies and they can't argue any defenses. I still don't understand why all of the things you're saying can't happen in arbitration Because Attic in bringing its third party or its complaint, the amended complaint, which has one claim, the complaint against Westchester is a declaratory relief seeking to enforce the settlement based on the breach of the duty to defend. So while there is a component of the breach, it's a it's a claim to resolve the issues of the settlement that applies under Montana law based on the settlement agreement, which we were. The arbitration agreement has nothing to do with the duty to cooperate. I guess that's where I'm not following you. Except that the duty to cooperate would have required us to obtain their consent, their written consent. And we didn't have to do that in order to enter into it. Well, that's because this case that you cited in the 28-J blesses the usual setup in breach of the duty to defend cases. Yes. And but but that's not this case. Takes it a little further because what insurance companies used to do on those setups is invoke the cooperation clause and say, or it's one of the ways they try to avoid them, invoke the cooperation clause and say, you you settled the case. You're not allowed to settle a case without our consent. And this new Montana case says, yeah, the insured can do that. Well, what the district court said, and appropriately so in this case, is that it wasn't necessary for the district court to make a determination regarding coverage and whether the exclusion applies. What is mandated by Tidyman's under the facts of this case is that Westchester should have initially offered a defense to its insured. It is that breach, which is not in dispute, that triggers the the finding in the case. They don't have to go to the breach of the duty to defend. In fact, they're not allowed to, as they said in Tidyman's. Coverage is off the table. Those all, those all go, though, to the substantive provisions of the policy, so-called defenses that they're not allowed to raise. I think what my esteemed colleagues here have been talking to you about is not so much that, but rather the collateral provision here that has nothing to do with coverage. And as I think Judge, I think it was Judge Kleinfeld mentioned, it could be raised by either party. We want to arbitrate. That isn't a defense to any allegation in the complaint, including the one for which they're seeking declaratory relief. And as Judge Friedland quite, I think, correctly pointed out, the various defenses that you say are gone, and you may absolutely be right, could easily be raised in front of the arbitrator. So they're not necessarily off the hook because they're going to arbitration. They just have the right to go to arbitration. Yet it's a futile act to acknowledge. But that doesn't make any difference. It's just another place to lose. That's true. However, I mean, I mean, it does apply. Tidyman's is going to be the main argument in front of the arbitrator. And if your interpretation of Tidyman's is correct, then for the insurance company, it's just another place to lose. Well, except that, it also plays in to the applicability of the FAA. Judge Ezra, you were talking about the difference between enforceability and those concepts. And this court has held that the FAA's limitations are the court's involvement to determining whether a valid agreement exists. The district court held there was a valid agreement, with which I disagree, but that's the holding. And whether the agreement encompasses the disputed issue. This court has also referenced this, as has the United States Supreme Court in Concepcion, as whether it's enforceable. That is something that the district court gets to decide. And the district court decided that because there was an abandonment of all of these policy provisions, then this arbitration clause is not enforceable. Boy, we're really sticking our neck out as far as the Supreme Court is concerned, if we go your way on that. I mean, every time anything's been raised before in the last five or ten years, they've said arbitrate. And people give excuses, and they say arbitrate. I agree that there's a liberal interpretation at the Supreme Court at this time. If you have any question about whether the Montana Supreme Court believes that this arbitration provision is waived, we should certify this to the Montana Supreme Court. I think it could well be a dispute between the Montana Supreme Court's view and the U.S. Supreme Court's view, but I'm pretty sure I know who wins in that dispute. Can you tell us why counsel, in response to, I think, Judge Kleinfeld's first question, attempted, and I think he did, assert his position that Montana law doesn't make any difference anyway, because this is all preempted by the FAA, and the FAA requires arbitration. So why don't you address that? The FAA has a saving clause, and the saving clause provides that state law may be applied if that law arose to govern issues concerning the validity, revocability, and enforcements of contracts generally. The saving clause directly applies to this situation, because this was an equitable remedy, a state law remedy that talks about the enforcement of contracts. Well, it says revocation of contract here. And if the contract is revoked altogether, then I don't think the insurance company has to pay any money, because they're only on the hook. Because they made a contract of insurance. In Concepcion, I was quoting from Concepcion, which talked about the enforceability. Oh, I was quoting from the statute, so we're cross-purposes there? The United States Supreme Court in Concepcion talked about enforceability, and it's important to note that the district court in this case focused on enforceability. They found that the district court found that this was a valid arbitration provision, again, I disagree, but held that it wasn't enforceable because it had been waived under a state law doctrine that does not apply directly to arbitration. That's the key under the saving clause. Is this a state law doctrine that applies only to arbitration, that tries to impair arbitration? No, it's a state law doctrine widely enforced, the Montana Supreme Court just recently held. It precludes you from putting on a defense in a later proceeding. That touches any proceeding, including arbitration. But the argument you just made is an argument that your opposing counsel made, and that is that it doesn't apply. If it doesn't apply, it's not substantive, and then it doesn't fall within the ambit of the Montana cases. And my point is that the saving clause has been interpreted by the- I was going back to the Montana argument, not the FAA argument. Oh, sorry. So you can't kind of make an argument on one side and say one thing and then go back, but it's a little different for Montana. In other words, you're arguing for purposes of the FAA that it's really not a substantive contractual argument, per se, that has to do with coverage. But for the purposes of the Montana law, you're arguing that it is. So I'm afraid that- No, I'm not arguing that. Okay. You make yourself clear, that's why. I'm arguing under Montana law that all the provisions of the contract are waived. And in particular, the provision as to where this would be adjudicated is waived, because- Why, and you're saying that the savings provision in the FAA saves you from having to use arbitration. Why? Precisely why? Because the district court specifically ruled on enforceability, and it's within the district court's right to rule on enforceability. This court applies the substantive law of Montana, which was applied by the district court, and it must take the facts that are made by the district court in making the arbitration determination as proven. But, well, we might have to accept the facts, but the question whether the estoppel rule prevents arbitration is legal, that we would review de novo, right? Renewing de novo, but you take as a fact that they're in breach by failing to show up at the first instance. That is Montana law. We can take that as given for the moment. So even taking that as given, though, again, whether that stops arbitration, as opposed to substantive contract defenses in the traditional sense, is a question de novo that we have to figure out, right? Yes, that's a de novo question, applying Montana law to the effect of Westchester's failing to show up. The other thing I want to mention as my time winds down is that Westchester's argument flies in the face of the purpose of the FAA. The purpose is to accommodate quick dispute resolution, and in this case, Westchester sat on its rights. Nobody denies that had Westchester, when it still had a dispute against the Gorman insureds as the applicability of this contract, could have arbitrated this dispute. They chose not to do so. Isn't that the same argument as they breached their duty to defend? Yes, it is. It was when they breached their duty to defend that they lost this right. So it gets us back to the same question about whether the breach of the duty to defend stops the arbitration or not. Yes. And the breach of the duty to defend stops the arbitration under Montana law, but in addition, it's important to look at what is actually at issue here. They are trying to upend a judgment which Montana law recognizes as reasonable and upend a settlement agreement in which the party specifically agreed that Montana law applies and the forum is Montana. Thank you. Thank you. Very quickly, your honors, I do think I understand the case. Dragon Y is irrelevant in the first instance because of the FAA, which requires a challenger to look at the making and enforcement of the arbitration agreement itself, not an independent provision. The savings clause analysis doesn't apply to that at all. The savings clause applied if they did make a specific argument about the arbitration clause and said the arbitration clause is unconscionable or is a contract of adhesion. Then you would apply the savings clause to that correct approach and say whether or not your challenge to the arbitration clause specifically is saved by the savings clause. It's not relevant to the threshold question of severability, which disposes of the district court's analysis. Counsel suggested the breach of duty is undisputed here. That's absolutely, of the duty to defend is undisputed, that's absolutely incorrect. 100% we dispute it. We didn't breach it at all. She's confusing- But your argument is that that should be resolved by the arbitrator, not by us today anyway. Absolutely. She's confusing a failure to defend with a breach of the duty to defend. A failure to defend itself is not a breach. It has to be an unjustifiable failure, i.e., a violation of, if the insurer, so long as the insurer makes an unequivocal demonstration that there would be no coverage, then there's no breach. It's not like a required- I suppose what you're saying here is like if the insurance contract expired in June and the occurrence was in July, the insurance company might well refuse to defend, but that wouldn't mean that it was obligated for the full amount of the policy that terminated in June. That's right. There are lots of reasons an insurer may not defend, not just because of expiration of the contract. The contract may not cover the loss. For example, here, there's a creditor exclusion, which says if the claim is based on the fact that you're a creditor, it's not covered. I understand that. You understand that sometimes- So, we have your briefing on that issue, and you're over your time. So, thank you both sides for the helpful argument. Thank you, Your Honor. The case is submitted.
judges: Kleinfeld, Friedland, Ezra